# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LARRY DAVIS, #361580 | * |
| Petitioner, | * |
| v | * Civil Action No.CCB-17-3002 |
| FRANK BISHOP, WARDEN, *et al.*, | * |
| Respondents. | * |

## MEMORANDUM

A response to the petition for writ of habeas corpus with exhibits was filed in the above-captioned case. The question of discovery has been resolved, and the matter is now ready for review. The court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*; Local Rule 105.6 (D. Md. 2018); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (stating that the petitioner is not entitled to a hearing under 28 U.S.C. §2254(e)(2)). For the reasons that follow, the court denies the petition and declines to issue a certificate of appealability.

### Factual and Procedural History

Self-represented Petitioner Larry Davis is challenging his 2010 jury convictions[1] in the Circuit Court for Baltimore City for attempted first-degree murder, attempted second-degree murder, attempted first-degree assault, second-degree assault, reckless endangerment, and

---

[1] Davis's first trial, which was counseled, resulted in convictions for attempted first-degree murder, second-degree assault, reckless endangerment, and knowing possession of incendiary material with intent to create a destructive device. The convictions were reversed on appeal because the trial court erred when it declined Davis's request to ask prospective jurors during voir dire whether they would give more or less weight to the testimony of a police officer. *See*ECF 8-11 at p. 2.

knowing possession of incendiary material with intent to create a destructive device.[2] The incident leading to the convictions, which were affirmed by the Court of Special Appeals of Maryland, occurred on the afternoon of April 11, 2006, when Davis's former girlfriend found him lying on the ground behind her car, looking as if he were working under the vehicle. ECF 8-11 at p. 4. When she screamed and ran, Davis gave chase, caught her by the arm, and threatened to kill her. *Id.* Her screams brought police response and Davis, who ran into nearby woods, was found, identified by the victim, and arrested. *Id.* at p. 5 A search of the scene located articles of clothing identified as Davis's and a duffle bag containing fuel cells with wires attached to them, a large black rubber-band, sulfuric acid sealed in a bag, pliers, wire-cutters, and a receipt from Standard Carpet to Davis's contracting company, which bore Davis's signature. *Id.* at pp. 4–5.

A yellow canister found duct-taped to the muffler of the victim's car was suspected to be an explosive device; the bomb squad was called and a nearby hospital was placed on lock-down. *Id.* at p. 6. Officer Bryan Bacon of the Baltimore City Police Department Special Operations Unit, Emergency Services Bomb Squad "determined that the item was a small propane tank of the type used by contractors for sweating pipes during plumbing jobs." *Id.* at p. 6. Wire and duct tape had been used to attach the tank to the car's tail pipe. *Id.* Officer Bacon removed and "x-rayed the gas cylinder, which he believed to contain MAPP gas, a type of propane that burns hotter than regular propane." *Id.* at p. 6. At trial, Officer Bacon testified that had the car been driven with the canister attached to the tail pipe, the canister likely would have ruptured, and if that had happened, there would have been "a large incendiary explosion" and possibly an

---

[2] Because the jury failed to follow the trial court's direction not to render a verdict on certain charged counts if it found Davis guilty on other counts, the trial court directed the docket be amended to reflect that verdicts were not rendered on the charges of attempted second-degree murder and attempted first-degree assault. ECF 8-11 at p. 3 n. 3.

2

ignition of the car's gas tank, which may have blown up the rear of the car and injured the driver, as well as any people in the immediate area. *Id.* at pp. 6–7.

Davis, who discharged counsel and undertook his own representation mid-way through his second trial, *id.* at p. 7 n. 8, unsuccessfully moved for judgment of acquittal on the charge of possessing incendiary material with intent to create a destructive device at the close of the State's case, arguing that no witness had verified that the tank attached to the car contained MAPP gas, and that ""[b]ecause the police department's x-ray of the canister showed only some type of liquid inside . . . there was no evidence that the canister contained incendiary material," *id.* at p. 7. "The State countered that there was nothing to suggest that the cylinder contained anything other than the substance it was labeled to contain, an extremely flammable MAPP gas." *Id.* at p. 7. The court denied Davis's motion and the jury convicted him. *Id.*

Following his unsuccessful direct appeal,[3] Davis sought certiorari in the Court of Appeals of Maryland, arguing that the Court of Special Appeals's decisions regarding the following were in error: (1) sufficiency of the evidence supporting conviction of possession of incendiary material; (2) sufficiency of the evidence supporting conviction for attempted first-degree murder; and (3) amendment of count 3 of the indictment from first-degree assault to attempted first-degree assault.

---

[3] Davis raised five claims on direct appeal: whether the 25-year consecutive sentence for knowing possession of incendiary material with intent to create a destructive device was an illegal increase in sentence; whether the evidence was sufficient to sustain convictions of attempted first-degree murder and knowing possession of incendiary material with intent to create a destructive device; whether the Circuit Court erred before Davis's first trial in denying his motion to dismiss for violation of his speedy trial rights; whether the trial court erred in permitting amendment of the charge of first-degree assault to attempted first-degree assault; and whether the guilty verdict on the charge of attempted first-degree assault was void because the jury was not polled or hearkened to the verdict. ECF 8-11 at p. 3. The Court of Special Appeals affirmed Davis's convictions in an unreported opinion issued on May 9. 2012, but vacated Davis's sentence for knowing possession of incendiary material, remanding the case to the Circuit Court for resentencing with respect to that conviction. ECF No. 8-11 at p. 11.

3

ECF 8-12 at pp. 1–2. On September 24, 2012, the Court of Appeals denied Davis's petition for writ of certiorari. *Davis v. State*, 428 Md. 544 (Md. 2012).

While the petition for certiorari was pending, on September 7, 2012, Davis filed a self-represented motion for new trial, later supplemented, ECF 8-14 at pp. 5–7, asserting that: (1) he recently had obtained the chain of custody form which established that evidence presented at trial was not what it purported to be, *id.* at p. 8; (2) prior to discharge, counsel at Davis's second trial performed ineffectively by failing to obtain the chain of custody form, ECF 8-16 at p. 11; and (3) the evidence was not sufficient to sustain his convictions, *id.* at p. 15. The motion was denied, and Davis's appeal to the Court of Special Appeals was denied in an unreported opinion on May 21, 2015. ECF 8-17. The mandate issued on June 22, 2015. *Id.* at p. 15. Further review was denied by the Court of Appeals on September 28, 2015. *See Davis v. State*, 445 Md. 5, 122 A.3d 975 (table) (Md. 2015). The Supreme Court denied certiorari review on May 2, 2016. *See Davis v. Maryland*, 136 S. Ct. 1833 (mem.), 194 L.Ed.2d 837 (2016).

On August 30, 2016, Davis filed a petition for post-conviction relief. As supplemented, the petition raised the following claims:

1. Trial counsel was ineffective for failing to file motions to compel certain evidence be produced, including an x-ray of a metal cylinder and a chain of custody report regarding that cylinder;

2. The prosecutor knowingly suppressed this x-ray and chain of custody evidence;

3. The prosecutor committed misconduct by providing the trial court with "false indictment information" and false information regarding a prior ruling;

4. Appellate counsel was ineffective for failing to object to the amendment of Davis's charges from first-degree assault to attempted first-degree assault;

4

5. The trial court committed misconduct by (a) making a biased ruling during a motion for judgment of acquittal and (b) allowing the amendment to the charges referenced above; and

6. Appellate counsel was ineffective for (a) failing to present a plain error claim relating to the jury instructions, and (b) failing to present a claim relating to the trial court's denial of Davis's motion for new trial made after the verdict.

ECF 8-19. The petition was denied on February 28, 2017. ECF 8-20. Davis raised these claims in his application for leave to appeal the denial of post-conviction relief. ECF 8-21. The application was denied by the Court of Special Appeals on October 3, 2017, with the mandate issuing December 12, 2017. ECF 8-22.

## Allegations in this Court

Davis presents the following grounds for relief:

1. The prosecutor committed misconduct by suppressing the chain of custody form and an x-ray and by eliciting police officer testimony in violation of Maryland Rules 5-701[4] and 5-702;[5]

2. Trial counsel was ineffective for failing to subpoena the chain of custody form prior to his first trial;

---

[4] Maryland Rule 5-701 governs opinion testimony by lay witnesses. It provides that:

> 1. If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

[5] Maryland Rule 5-702 governs testimony by experts, and provides that:

> Expert testimony may be admitted, in the form of an opinion or otherwise, if the court determines that the testimony will assist the trier of fact to understand that evidence or to determine a fact in issue. In making that determination, the court shall determine (1) whether the witness is qualified as an expert by knowledge, skill, experience, training, or education, (2) the appropriateness of the expert testimony on the particular subject, and (3) whether a sufficient factual basis exists to support the expert testimony.

5

3. Appellate counsel was ineffective for failing to raise the trial court's abuse of discretion as plain error; and

4. The trial court abused its discretion by making a biased ruling during Davis's motion for judgment of acquittal and amending the jury instructions to reflect the offense of attempted first-degree assault rather than simply first-degree assault.

ECF at pp. 7–8. Respondents argue that Davis's claim regarding prosecutorial misconduct in violation of Maryland Rules 5-701 and 5-702 is procedurally defaulted and otherwise fails to state a cognizable federal claim and that Davis's remaining claims are procedurally barred or without merit.[6]

## Standard of Review

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254(d) sets forth a "highly deferential standard for evaluating state-court rulings." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)) (internal quotation marks omitted). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v. Woodall*, 572 U.S.415, 419-20 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

---

[6] Respondents do not contend that the Petition is untimely.

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits either

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (internal citation omitted).

Pursuant to the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* (internal quotation marks and citation omitted).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on "an unreasonable determination of the facts." *Id.* (internal citation and quotation marks omitted). "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established

7

federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S 766, 773 (2010) (internal citation and quotation marks omitted).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* (internal citation omitted).

## Analysis

### I. Prosecutorial Misconduct

A claim is procedurally defaulted when it has not been exhausted in the state courts and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *see also Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). In completing his state appellate and post-conviction remedies, Davis failed to present his claim concerning the prosecutor's alleged elicitation of Officer Bacon's opinion testimony in violation of Maryland rules. His attempt at this juncture to convert this state law claim into a claim involving impermissible hearsay testimony under Fed. R. Crim. P. 801 is unexhausted and would now be procedurally barred in the state court given that Davis previously had the opportunity to raise the claim but did not. Although it does not appear that this claim was exhausted in state court proceedings, it need not be addressed on the merits due to a more fundamental flaw. Because the

claim rests on interpretation of state procedural rules and does not allege infringement of federal constitutional or other federal protections, it is not a cognizable ground for federal habeas corpus relief. *See* 28 U.S.C. § 2254(a); *see, e.g., Estelle v. McGuire*, 502 U.S. 62, 69 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

That portion of Davis's claim of prosecutorial misconduct alleging suppression of the chain of custody form and x-ray of the canister is fully exhausted. This claim, read in conjunction with Davis's second challenge to his convictions, turns in large part on whether the small propane tank found attached to the tail pipe of his ex-girlfriend's car contained MAPP gas, a type of propane that likely would have triggered an explosion sufficient to ignite the car's gas tank, injuring the driver and others in the vicinity. Davis contends that the prosecutor acted improperly by failing to produce a chain of custody report and x-ray report proving the canister contained MAPP gas and in his second challenge extends this contention to further argue that trial counsel (who represented Davis at both trials and whom Davis discharged during his second trial, ECF 8-7 at p. 19) was ineffective for failing to request chain of custody and x-ray report evidence concerning the canister. In his reply, Davis further argues that when the prosecutor failed to test the tank's contents, trial counsel should have moved to compel the prosecutor to test and identify the contents of the tank, given that the State previously failed to comply with a discovery request filed prior to the first trial to produce any x-ray of the tank. ECF 14 at pp. 14–15. Davis faults the prosecutor for failing to test the tank's contents and for failing to respond to discovery requested in the first trial (which he claims he reminded trial counsel about prior to the second trial). Absent the finding as to what the canister contained, Davis contends the charges against him cannot stand.

"A fair trial in a fair tribunal is a basic requirement of due process[,]" *In re Murchison*, 349 U.S. 133, 136 (1955), and prosecutors are held to a high standard of fairness, *see Berger v. United*

*States*, 295 U.S. 78, 88 (1935) ("It is as much [a prosecutor's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."). To establish prejudicial misconduct on the part of the prosecutor the alleged misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal citation and quotation marks omitted); *see also United States v. Caro*, 597 F.3d 608, 624 (4th Cir. 2010) (citing *Darden*, 477 U.S. at 181). To reverse his convictions based upon a claim of prosecutorial misconduct, Davis "must show (1) 'that the prosecutor's remarks or conduct were improper' and (2) 'that such remarks or conduct prejudicially affected his substantial rights so as to deprive him of a fair trial.'" *Caro*, 597 F.3d at 624–25 (internal citation omitted).

This court's previous examination of Davis's request for discovery informs the outcome of this claim. As noted in the Memorandum and Order of June 12, 2018, nothing in the record demonstrates that x-ray film of the canister existed. ECF 20 at pp. 4–5. In addressing Davis's discovery request, the Assistant State's Attorney who prosecuted Davis's case informed Respondents' counsel that an x-ray film did not exist at the time of either of Davis's trials. ECF 16 at ¶ 4. This statement is consistent with the Assistant State's Attorney's testimony at the post-conviction hearing, as recounted in the Circuit Court's statement of reasons denying post-conviction relief, stating that the Assistant State's Attorney "emphasized [in her testimony at the Feb. 15, 2017 post-conviction hearing] that no X-Report [sic] ever existed to her knowledge." ECF 8-20 at p. 10.

Although Davis contends this statement is "bogus" based on Officer Bacon's cross-examination during his first trial, ECF 17 at p. 1, the transcript shows that Officer Bacon did not testify clearly that the canister seized at the scene was in fact x- rayed. Bacon may have been describing how in similar situations a device might be x-rayed if it were necessary to determine whether it was safe to handle. ECF 17-1 at p. 3. Even assuming the canister was in fact passed

10

through an x-ray to make that determination, an x-ray image of its contents might not have been preserved. More importantly, the trial court in the second trial relied on the labeling on the canister to determine its specific contents, not the results of any x-ray. ECF 8-8 at pp. 95–96 (denying motion for acquittal on Count VI for possession of incendiary material and describing the canister's labeling as potentially consistent with an explosive or incendiary material and with MAPP gas); *see also* ECF 8-11 at pp. 14–15). To the extent that an x-ray film ever did exist, the failure to produce this film at trial and provide documentation of the chain of custody of the x-ray does not, without more, entitle Davis to habeas relief.[7]

## II. Ineffective Assistance of Trial Counsel

Turning to Davis's second claim, the court notes that to establish ineffective assistance at his second trial, Davis must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This second prong requires this court to consider whether there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.". *Id.* at 690.

---

[7] In seeking reconsideration of this court's previous denial of discovery, Davis requested a hearing, asserting that Assistant State's Attorney Kathleen Copsey testified falsely at Petitioner's February 15, 2017 post-conviction hearing regarding the chain of custody of an x-ray allegedly taken of the propane gas tank. ECF 22 at pp. 2–9. Davis's assertion that Copsey testified falsely is not supported by the record. As noted in the earlier Memorandum and Order, nothing in the record demonstrates that x-ray film of the canister existed. This interpretation is consistent with the Assistant State's Attorney's testimony at the post-conviction hearing, as recounted in the Circuit Court's statement of reasons denying post-conviction relief. ECF 8-20 at pp. 10–11.

11

Applying this standard here, it is important to note that Davis discharged counsel midway through his second trial, at which point he, not trial counsel, became responsible for any omissions or errors in his trial proceedings. Further, the post-conviction court examined and rejected the argument that Davis was prejudiced due to trial counsel's failure to obtain, and the State's failure to provide, the chain of custody and x-ray reports related to the propane tank recovered from the crime scene. Examining the merits of these claims "under the lens of Maryland's longstanding ineffective assistance of counsel and prosecutorial misconduct jurisprudence," the post-conviction court found as follows:

> When examining ineffective assistance of counsel allegations, a post conviction court determines whether (1) counsel's performance was deficient, and whether (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *State v. Borchardt*, 396 Md. 586, 602 (2007). In analyzing a purportedly deficient act of counsel, courts fell within a wide range of reasonableness. *Borchardt*, 396 Md. at 603. Prejudice exists if it is established that, had the error not occurred, it "may well have produced a different result." *Bowers v. State*, 320 Md. 416, 425 (1990). Prosecutorial misconduct occurs when the performance of the prosecution is "of sufficient significance to result in the denial of the defendant's right to a fair trial.'" *United States v. Bagley*, 473 U.S. 667, 676 (1985) (quoting *United States v. Agurs*, 427 U.S. 97, 108 (1976)). "[A]ctual prejudice must be shown before the sanction of dismissal or reversal of a conviction can be properly imposed . . . Even deliberate or intentional misconduct may not serve as grounds for dismissal absent a finding of prejudice to the defendant." *State v. Deleon*, 143 Md. App. 645, 667 (2002) (citations omitted).
>
> Thus, to prevail on his ineffective assistance of counsel and prosecutorial misconduct allegations, Petitioner must prove that there was error and that he was prejudiced by that error. Petitioner argues that the chain of custody report was not provided before trial and that the report would have been helpful to his defense. Petitioner argues that the report would have shown that the propane tank admitted into evidence was not the same item that was recovered from the crime scene.
>
> Petitioner erroneously assumes that the chain of custody report was necessary in order to authenticate the propane tank at trial. This is neither accurate nor consistent with evidentiary rules. Maryland Rule 5-901(b)(1) permits authentication to be made by "[t]estimony of a witness with

knowledge that the offered evidence is what it is claimed to be." *See Odum v. State*, 156 Md. App. 184, 210-12 (2004) (affirming the authentication of a firearm through testimony from a witness who recognized the firearm). Once a witness with knowledge testifies as to the identity of an item, the credibility of the witness's identity is left for the jury to decide. *Odum*, 156 Md. App. at 212. Chain of custody is only required for "certain items of evidence, in order to assure that the particular item is in substantially the same condition as it was when it was seized." *Wagner v. State*, 160 Md. App. 531, 552 (2005). All other items of evidence may be admitted under the presumption that the item "continues in the same condition" as it was when it was first collected by law enforcement personnel. *Accord Best v. State*, 79 Md. App. 241, 250 (1989) (citing *Amos v. State*, 242 Md. App. 365, 370 (1979). This can be verified by the testimony of the officer or technician who collected the evidence, or by testimony of a witness present when the evidentiary item was recovered and/or collected.

At Petitioner's retrial, Officer Bacon testified that he was the person who actually recovered the propane tank from Sarah Burke's vehicle. Tr. Vol. 6, 25-43. Officer Bacon testified that he was with the bomb squad who was summoned to the crime scene. *Id.* He testified that he personally removed the propane tank from Sarah Burke's car. *Id.* Officer Bacon further testified that he recognized the propane tank marked during trial as State's Exhibit No. 19. *Id.* He identified the propane tank as the one he recovered and detached from Ms. Burke's car. *Id.* Officer Bacon noticed no modifications to the tank. *Id.* at 69. Officer Bacon's testimony, and his distinct recollection of the propane tank, identified it; consequently, no chain of custody report was required to authenticate and admit the propane tank into evidence. Office Bacon's testimony alone was sufficient, as a matter of law.

Petitioner further fails to prove that the use of any chain of custody report at trial would have changed the trial result. Petitioner had full opportunity to cross-examine Officer Bacon and challenge his ability to identify the propane tank (State's Exhibit No. 19) as the one from the crime scene. Officer Bacon's testimony was powerful, and his ability to discuss the propane tank's contents and to confirm it contained gaseous liquid was crucial evidence. Despite Petitioner's insistence, there does not appear to be an [X]-ray report and this is a bald assertion by the Petitioner. This Court finds credible the testimony of Assistant State's Attorney Copsey that no ex-ray [sic] report was ever produced by the State or its witnesses..

This Court further observes that at the time of Officer Bacon's testimony, Petitioner was in full control of his own defense, having discharged Ms. Cline and waiving his right to counsel earlier that morning. Tr. Vol. 6 at 13-25. Perhaps it was difficult for the Petitioner to conduct an effective cross-examine Officer Bacon regarding his ability to identify the propane tank without the benefit of legal training and extensive knowledge of the

> Maryland Rules of Evidence. The Court would note that Petitioner did take a full opportunity to vigorously cross-examine Officer Bacon about the propane tank and the X-ray results, which unfortunately further emphasized to the jury that Officer Bacon could identify the propane tank. *Id.* at 68-71. The Petitioner cannot attribute any failure to ask better or more probing questions to his trial counsel since, at this juncture in the trial he was self-represented. *Id.*
>
> Clearly, Petitioner has not established prejudice, sufficient legal error, or ineffective assistance of counsel. There is simply no evidence of prosecutorial misconduct. These are bald allegations here, not founded in the record or evidence and fail, as a matter of law, to merit post conviction relief. *See Duff v. Warden*, 234 Md. 646, 648 (1964); *See also Tucker v. Warden*, 234 Md. 331, 333 (1966).

ECF 8-20 at pp. 11–15.

The post-conviction court properly applied the standard set forth in *Strickland*, 466 U.S. at 687, which held that to establish that a Sixth Amendment right to counsel violation has occurred a petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense.[8] The post-conviction court concluded that because the chain of custody form was not material to the admission of the propane cylinder, Davis did not suffer any prejudice from the allegedly deficient or inappropriate actions of counsel.[9] This court concurs.

---

[8] The post-conviction court ruling also properly applied the standard set forth in *United States v. Bagley*, 473 U.S. 667, 676 (1985), which held that a claim of prosecutorial misconduct must show that the prosecutor's performance was "of sufficient significance to result in the denial of the defendant's right to a fair trial." (internal citation and quotation marks omitted).

[9] The state court findings are congruent with the Memorandum and Order denying Davis's discovery request wherein the court rejected Davis's argument that the prosecutor improperly suppressed the chain of custody form concerning the x-ray of the gas canister and found that an x-ray film did not exist at the time of either of Davis's trials. ECF 20 at pp 4–5. Despite this determination, Davis moved for reconsideration based on his belief that an x-ray film exists, citing trial testimony by Officer Brian Bacon. This argument is not supported in the record, which supports an inference that Officer Bacon did not testify that the canister seized at the scene was in fact x-rayed, but rather described generally how in similar situations a device might be x-rayed if it were necessary to determine whether it was safe to handle. ECF 17-1 at p. 3; ECF 20 at p. 5.

Because this is a reasonable application of federal law as determined by the Supreme Court, no basis for relief under 28 U.S.C. § 2254(d) has been stated.

### III. Ineffective Assistance of Appellate Counsel

Davis next asserts that appellate counsel was ineffective for failing to raise the "trial court's abuse of discretion" as "plain error" (a claim which appears to encompass both elements of Davis's final claim concerning denial of his motion for judgment of acquittal and improper amendment of the jury instructions to reflect the offense of attempted first-degree assault rather than first-degree assault). In the context of claims regarding the effective assistance of appellate counsel, the Supreme Court has made clear that an indigent defendant does not have a constitutional right to compel his appointed appellate counsel to raise every conceivable claim on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Further, the Court observed that "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id.* at 751–52.

Davis's claims of ineffective assistance of appellate counsel based on trial court error were rejected by the Circuit Court on post-conviction review for the following reasons:

> Petitioner claims that he was rendered ineffective assistance of appellate counsel when his appellate counsel failed to raise an issue on appeal regarding the trial court's erroneous jury instruction on the elements of Knowing Possession of Incendiary Material. The issue of whether a petitioner has been denied effective assistance of appellate counsel may be litigated by a post conviction proceeding. *State v. Calhoun*, 306 Md. 692, 706 (1986); *State v. Gross*, 134 Md. App. 528, 556-558 [(2000)]. The Supreme Court has ruled that the test to be used to measure appellate counsel's representation is the *Strickland* test. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). [W]hen an accused is denied effective assistance of appellate counsel, the proper post conviction remedy is the right to file a belated appeal. *Garrison v. State*, 350 Md. 128, 139-141 (1998).

> However, Petitioner's allegation does not merit post conviction relief because the allegation was waived for the purposes of post conviction consideration. The waiver principles of post conviction are set forth in Md. Code Ann., Crim. Proc. § 7-106(b), which provides, in pertinent part:
>
>> [A]n allegation of error is waived when a petitioner could have made but intelligently and knowingly failed to make the allegation: 1. before trial; 2. at trial; 3. on direct appeal, whether or not the petitioner took an appeal; 4. in an application for leave to appeal a conviction based on a guilty plea; 5. in a habeas corpus or coram nobis proceeding began by the petitioner; 6. in a prior petition under this subtitle; or 7. in any other proceeding that the petitioner began.
>
> Id. at § 7-106(b)(1)(i). In Curtis v. State, 284 Md. 132, 149 (1978), the Court of Appeals held that the "intelligent and knowing" requirement set forth in Crim. Proc. § 7-106(b) only applies to issues relating to fundamental rights of a criminal defendant. Issues relating to non-fundamental rights, on the other hand, are deemed waived simply "if petitioner or her counsel failed to exercise a prior opportunity to raise [the issue]." McElroy v. State, 329 Md. 136, 140-41 (1993). In Davis v. State, 285 Md. 19, 31-35 (1979), the Court of Appeals ruled that allegations concerning the correctness of jury instructions are to be deemed waived, for post conviction purposes, if the matter was not raised at trial.
>
> During Petitioner's trial, Petitioner made no objection to Judge Allison's jury instruction on the elements of Knowing Possession of Incendiary Material. Petitioner cannot ascribe the failure to make any objection to counsel because he was self-represented when Judge Allison gave the jury instructions. Petitioner's failure to object constituted a waiver of the right to challenge Judge Allison's jury instruction on post conviction review. Petitioner's failure to object also constituted a waiver for appellate purposes. See Md. Rule 4-325(e) ("No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury ..."); See also Yates v. State, 429 Md. 112, 130 (2012). Therefore, Petitioner's appellate counsel did not commit ineffective assistance of appellate counsel by choosing not to raise a challenge to Judge Allison's jury instructions on appeal. Again, Petitioner's averments amount to nothing more than bald allegations.

ECF 8-20 at pp. 16–17. The State court's ruling concerning jury instructions survives scrutiny under 28 U.S.C. § 2254(d). The State court properly concluded that because Davis (who was acting as his own attorney) failed to object to the jury instructions in question, his allegation was waived for purposes of post-conviction relief. The State court's determination that this claim is

16

procedurally barred should not be disturbed. *Wainwright v. Sykes*, 433 U.S. 72, 90–91 (1977); *Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010) (internal citations omitted). Alternatively, the State court properly applied the correct standard under *Strickland* and concluded that because Davis's claim was procedurally barred, appellate counsel was not ineffective for failing to raise such a non-meritorious claim.

To the extent that Davis also asserts trial court abuse of discretion for actions relating to the amendment of his first-degree assault charge to attempted first-degree assault, the Circuit Court rejected such claim as procedurally barred, based on Maryland law:

> The record reflects that, during Petitioner's first trial on May 22, 2007, Judge Themelis granted the State's request to amend the charge of First-Degree Assault to Attempted First-Degree Assault. *See* Docket Entries (May 22, 2007). Petitioner contends that this amendment was granted in error, and alleges claims for relief based on ineffective assistance of trial counsel, ineffective assistance of appellate counsel, prosecutorial misconduct, and judicial error stemming from the wrongful amendment.
>
> In Maryland, a criminal defendant may only seek post conviction relief for charges that resulted in 7-102(a). Here, the record reflects that, although the jury found Petitioner guilty of Attempted First-Degree Assault, the trial court closed the Attempted First-Degree Assault charge as "verdict not rendered." *See Davis*, No. 407, Sept. Term, 2010, slip op. at 19-21. The record indicates that Judge Allison entered a 'verdict not rendered' disposition because the jury disregarded instructions on the verdict sheet, which instructed the jury not to render a verdict on Attempted First-Degree Assault if the jury found Petitioner guilty of Attempted First-Degree Murder. *Id.* Therefore, no judgment was entered as to the charge of Attempted First-Degree Assault and no sentence was ever imposed. Thus, Petitioner's third, fourth, fifth, and sixth allegations of error do not merit post conviction relief.

ECF 8-20 at p. 15. The State court properly concluded that, because the trial judge closed the attempted first-degree assault conviction as "verdict not entered," Davis was barred from seeking post-conviction relief based on trial court error with respect to that charge. ECF No. 8-20 at p. 15. The State court's determination that this claim is procedurally barred should not be disturbed. *Wainwright*, 433 U.S. at 90–91; *Sharpe*, 593 F.3d at 377.

## Conclusion

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Because the accompanying Order is a final order adverse to the applicant, 28 U.S.C. § 2253(c)(1) requires issuance of a certificate of appealability before an appeal can proceed.

A certificate of appealability may issue only if the prisoner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court dismisses a habeas petition solely on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.' " *Rose v. Lee*, 252 F.3d 676, 684–85 (4th Cir. 2001) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a district court rejects constitutional claims on the merits, a petitioner satisfies the standard by demonstrating that "jurists of reason could disagree with the district court's resolution of [the] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773-74 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)).

Davis's claims are dismissed both on procedural grounds and on the merits. Upon review of the record, Davis has not made the requisite showing to warrant a certificate of appealability as to any of his claims and the court therefore declines to issue one. Davis may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

A separate order denying the petition and declining a certificate of appealability follows.

_4-17-19_  
Date

_CCB_  
Catherine C. Blake  
United States District Judge